## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ORION IP, LLC** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO.  607 CV 138** |
| | § | **PATENT CASE** |
| **XEROX CORPORATION, et al.** | § | |
| | § | |
| **Defendants** | § | |

### MEMORANDUM OPINION

The Court previously construed the patents-in-suit, U.S. Patent Nos. 5,367,627 (the "'627

patent") and 5,615,342 (the "'342 patent") in *Orion IP, LLC v. Staples, Inc.* (the "*Staples* Opinion")

and in *Orion IP, LLC v. Hyundai Motor America* (the "*Hyundai* Opinion").[1]  *See* Civil Action No.

2:04-cv-297, Docket No. 307, December 15, 2006; Civil Action No. 6:05-cv-322, Docket No. 488,

April 10, 2007.  Orion accuses Defendants of infringing claims 1, 3, 4, 11, 13, and 14 of the '342

patent and claims 1, 6, 7, and 8 of the '627 patent.  Because the Court previously construed the terms

at issue, the Court allowed Defendants to file the opening brief.

### BACKGROUND

The '627 patent generally describes a computerized system that assists a salesperson in

training and with sales of parts corresponding to particularized products.  The system includes a data

storage device that stores graphic and textual information including specifications, features, and

customer benefits. A display apparatus displays portions of this information.  A part selection device

electronically navigates through part-choice menus based on previously entered information.  The

invention is said to eliminate the need for salespeople to use more cumbersome paper-based methods

---

[1] The Court fully incorporates its claim construction opinions in the *Staples* and *Hyundai* cases into this opinion.

of determining the most appropriate part for a customer.

The '342 patent generally describes an electronic system for creating customized product proposals.  The system queries a user to determine a customer's needs and interests and then uses stored pictures and text segments to create a customized proposal that appeals to the customer.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope.  *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  This intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id*.  Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id*.  Differences among the claim terms can also assist in understanding a term's meaning.  *Id*.  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id*. at 1314–15.

2

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs. *Id*.  Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'"  *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.  The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'"  *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but

technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

**U.S. Patent 5,615,342**[2]

<u>Environment</u>

Previously, the Court determined that this term did not require construction. In that opinion, the Court stated,

> Orion contends this term is used according to its plain meaning and does not require construction. The Court agrees. During the [claim construction] hearing, Orion agreed that a blank background is not an environment. Orion also agreed that a solid colored or patterned backdrop is also not an environment.[3]

*See Staples* Opinion at 22–23. In this case, Orion contends "environment" does not require construction, while Defendants argue that Orion should be held to its earlier concession and "environment" should be construed as "background for the product [picture/image] that is not blank, solid colored or a patterned backdrop."

To the extent Defendants argue that the Court previously construed this term as a "background for the product [picture/image] that is not blank, solid colored or a patterned backdrop," they are incorrect. *See* Defendants' Brief (Docket No. 756) at 7. In the *Staples* case, the Court determined that this term did not require construction. Similarly, Defendants' argument that Orion

---

[2] The asserted claims are set forth in Appendix A.

[3] Orion did qualify that a checkered floor might be an environment.

previously agreed to Defendants' proposed construction is equally incorrect.  Orion continues to stand by its earlier representation to the Court that it will not argue a blank, solid colored, or patterned backdrop (except for possibly a checkered floor) is an "environment."  *See* Orion's Brief (Docket No. 770) at 3 n.5.  Therefore, this aspect of Defendants' proposed construction does not address an issue of claim scope and is therefore unnecessary.

The only issue relating to claim scope appears to be whether an "environment" must be a "background" as Defendants' proposed construction inherently requires.  Contrary to Defendants' arguments, Orion never conceded, and the Court never held, that an "environment" is a "background."  Defendants offer no support for this limitation and shy away from it in their briefing: "an 'environment' is something or somewhere 'in which the product may be used'" and "an 'environment' as used in the '342 patent must be something other than a blank, solid colored or a patterned backdrop for product display."  Defendants' Brief at 7, 8.  Defendants offer no support from the claim language or the specification that the "environment" must be a "background."  Accordingly, the Court refuses to place that limitation on the claim.

Defendants argue that under *O2 Micro*, the Court must construe the term to resolve the parties' dispute as to claim scope.  As everyone agrees that a blank, solid, or patterned backdrop is not an "environment" and Defendants have failed to offer any support whatsoever for their limitation that the "environment" must be a "background," the Court is at a loss to determine what the parties' supposed claim scope dispute actually is.  Accordingly, the Court declines to construe the term at this time.  If either sides' infringement or invalidity arguments hinge on the scope of "environment," those arguments should be presented to the Court in the form of a summary judgment motion, and if necessary, the Court will further clarify the scope of the term then.

<u>Selecting a particular product picture in response to at least one of the customer answers; selecting a particular product environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers</u>

In the previous two claim construction opinions, the Court resolved the parties' disputes and declined to construe the term partly because "the claim language is sufficiently clear that a particular product picture, a particular product environment picture, and a particular text segment are selected in three separate steps." *Staples* Opinion at 24. Defendants contend that the Court should memorialize its previous rulings and formally construe the term to mean "a particular product picture, a particular product environment picture (separate from the product picture) and a particular text segment must be selected in three separate steps." Defendants contend that Orion argued for this construction in the *Hyundai* case, but cites eight pages of the transcript without a pinpoint citation to where exactly Orion allegedly argued for this construction.

Orion argues that Defendants' construction attempts to reintroduce a "separateness" limitation that the Court rejected in the *Staples* case. *See Staples* Opinion at 13-18. In response, Defendants contend that they are not requesting that the Court go against its prior rulings on separateness but "simply request that the Court memorialize its prior statements regarding the meaning of the Selecting Term and Automatically Selecting Term." Defendants' Reply Brief (Docket No. 778) at 3. As Defendants claim they agree with the Court's prior statements about the term, and Orion has not offered construction contrary to what the Court has already said about the term, there does not appear to be an actual dispute about claim scope. Accordingly, the Court reaffirms its statement that the claim does not require construction because "the claim language is sufficiently clear that a particular product picture, a particular product environment picture, and a particular text segment are selected in three separate steps."

<u>Automatically selecting, in response to at least one of the customer answers, a product image, a product environment image, and a text segment</u>

The parties' arguments on this term are the same as those for the previous term.  Accordingly, this term does not require construction.

<u>Computer</u>

This term's construction became an issue during the *Hyundai* trial, and the Court instructed the jury:

> The overall method of claims 1 and 11 is not limited to being implemented on a single computer, and where the term "the computer" appears within the claims it does not limit claims 1 and 11 to a single computer.

*Orion v. Hyundai*, Charge of Court (Docket No. 574) at 10.  Defendants now argue this terms is indefinite or should be construed to mean "one or more computers under the control of one entity."

*Indefiniteness*

Defendants contend the term is indefinite because it lacks antecedent basis.  Defendants contend that because "computer" is used as an adjective in the preamble ("computer assisted method") there is no antecedent basis for its use as a noun in the claimed steps ("presenting to a user of the computer").  To support their contention, Defendants cite the Manual of Patent Examining Procedure ("MPEP"), which states:

> A claim is indefinite when it contains words or phrases whose meaning is unclear. The lack of clarity could arise where a claim refers to "said lever" or "the lever," where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference.

MPEP § 2173.05(e).

The claims at issue are directed to a "computer assisted method."  This is not the situation the MPEP is directed to where it is unclear what element the limitation references.  The use of "computer" in the preamble provides ample antecedent basis for the term's use in the remainder of

the claim.  This term is not indefinite for lack of antecedent basis.

*Control*

Defendants argue the term should be construed as "one or more computers under the control of one entity" because the patent does not disclose computer networks under the control of more than one entity.  Defendants argue that because communication between computers under the control of different entities was known at the time, the patent should have disclosed how that communication would occur.  Defendants contend the '342 patent is not directed to internet retail although the internet did exist at when the patent application was filed.  Defendants also argue that the term should be limited to computers under one entity's control because the figures show only one user interface102 for the computer system 100.  *See* '342 Patent, Fig. 2; *id.* at col. 8:46–67.

The  determination of whether the claims read on internet retail can be addressed at summary judgment or trial; it is not appropriate at this stage of the litigation.  The case that Defendants cite to support their argument that the internet should be excluded from claim scope since it is not disclosed in the claims does not stand for Defendants' far-reaching proposition of law.  That case addressed the infringement of means-plus-function claims, which are limited to the structure disclosed in the specification.  *See Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1362–63 (affirming a finding of noninfringement of a means-plus-function claim "because the accused device includes structural features that the applicant represented were different from the invention").

Defendants' additional limitation that the computers must be under the control of one entity is unnecessary.  The law requires that "'where the action of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling parties, i.e.,

the 'mastermind.'" *Muniauction, Inc. v. Thomson Corp.*, __ F.3d __ (Fed. Cir. July 14, 2008)

(quoting *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378–79 (Fed. Cir. 2007)).

Accordingly, the Court does not adopt Defendants' proposed limitations.  The Court construes the

term as "one or more computers."

### U.S. Patent 5,367,627

Compiling

The parties agree that "compiling" means "collecting or assembling."  The Court agrees and

adopts this construction.

Comprising

Claim 1 provides for a "computerized method of selling parts for particular equipment

specified by a customer," which includes the following steps:

> a) receiving information identifying a customer's parts requirements for the equipment, *comprising* the step of receiving equipment application information, *comprising* an identification of the equipment with which one or more parts are to be used;
> . . .
> c) gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements, *comprising* the step of electronically associating at least one of the parts within the plurality of parts with the received equipment application information . . . .

'627 patent, col. 30:4-22 (emphasis added).

Defendants argue that when "comprising" is used as a transitional phrase between the

preamble and the claim terms, it has a special legal meaning of "including" in an open-ended sense

and does not exclude additional, unrecited elements or steps.  Defendants contend that because

"comprising" is not used as a transitional phrase in the claim body, it should be interpreted under

normal claim construction rules.  Relying on a lay dictionary, Defendants contend "comprising"

means "including or containing."

Orion does not object to the Court construing the term "comprising" to mean "including or containing" but opposes what effect Defendants contend that construction would have on the claim language. Specifically, the parties seem to dispute how specific the "identification of the equipment" must be.

To the extent that the parties dispute how "identification of the equipment" should be construed, the parties have failed to squarely present that issue to the Court. Whether information given is adequate to satisfy the identification of the equipment is an infringement issue that can be addressed on summary judgment or at trial.

When used as a transitional phrase in the preamble of a claim, "comprising" has an open-ended meaning. D. CHISUM, CHISUM ON PATENTS § 8.06[1][b][ii][A]. "[T]he Court's analysis of transitional phrases in the claims is based on how the terms are used . . . not merely where they are used." *Gen. Elec. Co. v. Hoechst Celanese Corp.*, 698 F. Supp. 1181, 1189 n.5 (D. Del. 1988). When "comprising" is not used as a transitional phrase, it has no special legal effect. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 n.8 (Fed. Cir. 1986). Here, "comprising" is not used as a transitional phrase. Thus, the open-ended meaning does not apply.

Although Orion agrees "comprising" means "including or containing," Orion neither expressly concedes nor disputes Defendants' contention that as used in the claim body, "comprising" is closed. Orion puts forth no legal or factual arguments that "comprising" is used in an open-ended manner in the claim body. Accordingly, Orion has waived any argument it may have that "comprising" should be construed as open-ended. The Court construes the term, when used in the claim body, as closed and meaning "including or containing."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner

set forth above.  For ease of reference, the Court's interpretations of the claims are set forth in a table

as Appendix B.  The asserted claims are set forth in Appendix A.

**So ORDERED and SIGNED this 21st day of August, 2008.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# APPENDIX A

### U.S. Patent 5,615,342

1. A computer assisted method of generating a customized proposal for selling products to particular customers, the method comprising the steps of:

    presenting to a user of the computer a plurality of questions relating to features and uses of the products;

    inputting into the computer a plurality of customer answers to the questions, the answers specifying a customer's desired product features and uses;

    storing in the computer product pictures, product environment pictures and text segments;

    selecting a particular product picture in response to at least one of the customer answers;

    selecting a particular product environment picture in response to at least one of the customer answers;

    selecting a particular text segment in response to at least one of the customer answers; and

    generating a customized proposal for the customer using the particular product picture, the particular product environment picture and the particular text segment.

3. A method as recited in claim 1, further comprising the steps of:

    storing a plurality of product specifications related to producing the products in a variety of configurations which are of varying interest to different potential customers who may purchase the product;

    linking at least one of the customer answers with a product specification which is of particular interest to the customer; and

    generating, for inclusion in the proposal, one or more individualized pages comprising the product specification which is of particular interest to the customer.

4. A method as recited in claim 1, further comprising the steps of:

    storing a plurality of performance specifications related to the performance of the products in a variety of configurations which are of varying interest to different potential customers who may purchase the product;

    linking at least one of the customer answers with a performance specification which is of particular interest to the customer; and

    generating, for inclusion in the proposal, one or more individualized pages comprising the performance specification which is of particular interest to the customer.

11. A computer assisted method of generating a customized proposal for a customer to facilitate a sale of a product, the computer storing product images, product environment images and text segments, the method comprising the steps of:

    prompting a user of the computer with a plurality of questions related to at least one of a desired feature and desired use of the product;

    receiving into the computer customer answers of the customer to the plurality of questions;

    automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment; and

    generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment.

13. A method as recited in claim 11, further comprising the steps of:

    storing a plurality of product specifications related to producing the products in a variety of configurations which are of varying interest to different potential customers who may purchase the product;

    linking at least one of the customer answers with a product specification which is of particular interest to the customer; and

    generating, for inclusion in the proposal, one or more individualized pages comprising the product specification which is of particular interest to the customer.

14. A method as recited in claim 11, further comprising the steps of:

    storing a plurality of performance specifications related to the performance of the products in a variety of configurations which are of varying interest to different potential customers who may purchase the product;

linking at least one of the customer answers with a performance specification which is of particular interest to the customer; and

generating, for inclusion in the proposal, one or more individualized pages comprising the performance specification which is of particular interest to the customer.

## U.S. Patent 5,367,627

1. A computerized method of selling parts for particular equipment specified by a customer, comprising the steps of:

   a) receiving information identifying a customer's parts requirements for the equipment, comprising the step of receiving equipment application information, comprising an identification of the equipment with which one or more parts are to be used;

   b) electronically specifying information identifying a plurality of parts and specifications for the parts;

   c) gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements, comprising the step of electronically associating at least one of the parts within the plurality of parts with the received equipment application information; and

   d) receiving the gathered parts-related information and compiling the parts-related information into a proposal meeting the customer's requirements.

6. The method of claim 1 wherein the step (d) further comprises the step of including within the proposal specifications corresponding to the one or more parts which meets the customer's requirements.

7. The method of claim 1 wherein the step (d) further comprises the step of including within the proposal price information corresponding to the one or more parts which meets the customer's requirements.

8. The method of claim 1 wherein the step (d) comprises the step of including within the proposal graphical information corresponding to the one or more parts which meets the customer's requirements.

# APPENDIX B

**U.S. Patent 5,615,342**

| Claim Term | Court's Construction |
|---|---|
| environment | no construction necessary |
| selecting a particular product picture in response to at least one of the customer answers;<br>selecting a particular product environment picture in response to at least one of the customer answers;<br>selecting a particular text segment in response to at least one of the customer answers | no construction necessary |
| Automatically selecting, in response to at least one of the customer answers, a product image, a product environment image, and a text segment | no construction necessary |
| computer | one or more computers |

**U.S. Patent 5,367,627**

| Claim Term | Court's Construction |
|---|---|
| compiling | [AGREED]<br>collecting or assembling |
| comprising | including or containing |